## GIBSON DUNN

Jordan Estes
Partner
T: +1 212.351.3906
jestes@gibsondunn.com

VIA ECF
The Honorable Victor Marrero
Daniel Patrick Moynihan Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *S.E.C. v. Wander et al*., Case No. 1:25-cv-08565 (S.D.N.Y.)

Dear Judge Marrero:

We represent Defendant Joshua Wander in the above-captioned action.  We write in response to Your Order, Dkt. No. 32, and pursuant to Rule II.B.2. of Your Individual Practices to inform the Court that the parties have been unable to resolve their dispute over the appropriateness of filing Mr. Wander's proposed motion to dismiss (the "Motion").  For the reasons set forth below, this Court should consider and decide the Motion.

On December 15, 2025, the undersigned sent a letter to the SEC identifying fundamental deficiencies in its Complaint.  *See* Exhibit A.  On December 22, 2025, the SEC made clear that it would not withdraw or amend the Complaint and would oppose a motion to dismiss.  *See* Exhibit B ("SEC Letter").  The SEC's response only underscores the pleading errors in its Complaint and its improper attempt to repackage a private contractual dispute into securities fraud.  For the following reasons, Mr. Wander respectfully requests leave to file the Motion.

*First,* the SEC has not adequately pleaded the gravamen of the Complaint, which is that Mr. Wander "mis[led] prospective investors in the Offering about the Issuer's Financial prospects." Compl. ¶ 41.  The SEC's theory turns on the premise that statements regarding 777's *projected* net income figure and ability to pay *future* dividends were misleading.  But those statements, which concern inherently uncertain outcomes, are insufficient to make out a claim under the securities laws.  The SEC's Letter fails to grapple with the obvious implication of its own allegations:  the "bespeaks caution" doctrine applies to the centerpiece of its theory.  SEC Letter at 3; *see also* Compl. ¶ 54.  As explained in Mr. Wander's initial letter, a *projected* future income figure is not a statement of present fact.  The bespeaks caution doctrine is clear that forward-looking opinion statements, statements expressing corporate optimism, and projection statements are generally inactionable under the federal securities laws, ***even if the statements later turn out to be inaccurate,*** so long as they were honestly believed at the time they were made.  *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013).  Statements about projected net income are the paradigmatic example of a forward-looking statement.

The SEC resists that conclusion by alleging that Mr. Wander "knew" the Issuers would be unable to pay dividends because of a Credit Facility overdraw.  But the Complaint offers no particularized facts to support that allegation, relying instead on a conclusory assertion that SuttonPark was the

# GIBSON DUNN

only business, among all of 777 Partners' portfolio companies, that was capable of generating a profit for Issuers. Even then, the SEC contradicts its own assertion by admitting that the Issuers were profitable *even without* SuttonPark and thus had other sources from which the dividends could be paid. *See* Compl. ¶ 3 (alleging only that "SuttonPark's profits made up a *significant portion* of the Issuers' profits" (emphasis added)).

The SEC's attempts to characterize statements about the potential dividend as fraudulent fail for the same reason. *See In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 86 (S.D.N.Y. 2017) (recognizing that statements regarding future dividends are "inherently aspirational or forward-looking in nature"). "[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). And as Mr. Wander's First Letter underscores the Complaint does not even allege that the dividend went unpaid – a point the SEC's response ignores.

Moreover, the Investor Presentation and the Subscription Agreements are replete with cautionary language defeating any claim that these figures were misleading. *See, e.g.*, Subscription Agreement at 2 ("The undersigned understands and acknowledges that (i) an investment in the Preferred Units involves numerous risks, including but not limited to those set forth on Schedule A . . . ."); Subscription Agreement at Schedule A ("We are dependent on a few key people for our major investment and capital allocation decisions . . . . High levels of catastrophe losses . . . could materially and adversely affect our results of operations, our financial position and/or liquidity . . . . The COVID-19 pandemic and measures to reduce its spread have had, and will likely continue to have, a material adverse impact on our business, results of operations and financial condition."); *see also Brown v. E.F. Hutton Grp.*, 735 F. Supp. 1196, 1200 (S.D.N.Y. 1990) ("[T]he offering materials taken as a whole 'bespeak caution' and sufficiently disclose the relevant risks of the investment.").

*Second*, the SEC continues to point to vague assertions and "reasonable inference[s]," rather than specific fraudulent statements made by Mr. Wander himself. *See* SEC Letter at 2. But Rule 9(b) demands *particularity*, requiring the SEC to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). The SEC fails to do so. For example, the SEC claims that Wander "approved a presentation and other related investor marketing materials," SEC Letter at 2, but the Complaint alleges that "Alfalla drafted [the] slides used in [the] investor presentation," Compl. ¶ 6. As the Supreme Court has made clear, to "[m]ake [a statement] . . . means to state, not to create." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 637 (S.D.N.Y. 2017) (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (internal quotation marks omitted)). Here, the Complaint does not allege that Mr. Wander made the statements in the preferred equity offering presentation or related investor marketing materials. At most, it alleges that he approved materials drafted by someone else. Indeed, the Complaint fails to allege any facts showing that Mr. Wander had "ultimate authority" over the statements in those documents, that he knowingly adopted the

# GIBSON DUNN

truth of those statements, or that any of those statements was attributable to him. *Janus*, 564 U.S. at 142. The SEC's reliance on mere "approval" is legally insufficient.

Similarly, the Complaint fails to allege that Mr. Wander misled investors that Offering proceeds would be used for "general corporate purposes." Compl. ¶ 8. Specifically, the Complaint does not allege that the funds were transferred to Mr. Wander for a purpose unrelated to the Issuers' businesses. As a result, the SEC's reliance on *S.E.C. v. China North East Petroleum Holdings Ltd.* is misplaced. There, the complaint alleged that "none of the transfers [to company insiders] had any documented business purpose." Complaint at ¶ 6, No. 12-cv-08696-NRB (S.D.N.Y. Nov. 29, 2012). Here, by contrast, the Complaint alleges only the flow of funds to Mr. Wander's bank account. The Complaint is otherwise devoid of any allegation that the funds were retained for Mr. Wander's "personal benefit," SEC Letter at 3, and *not* ultimately used for the "general corporate purpose" of buying out Mr. Wander's preexisting shares of preferred equity.

For the foregoing reasons, Mr. Wander respectfully requests permission to file the Motion.

Sincerely,

*Jordan Estes*
Jordan Estes

cc:    Hon. Victor Marrero, USDJ (*via ECF and E-Mail*)
       All counsel of record (*via ECF*)