# Exhibit B



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

**NEW YORK**
**REGIONAL OFFICE**

December 22, 2025

**Via ECF and E-Mail**

Jordan Estes
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193

Re: *S.E.C. v. Wander et al.,* No. 1:25-CV-8565 (VM) (S.D.N.Y.)

Dear Counsel:

We write on behalf of the Securities and Exchange Commission (the "Commission") in response to your letter dated December 15, 2025, and pursuant to Rule II.B.1 of Judge Marrero's Individual Practices. The Commission will oppose your client Joshua Wander's proposed motion to dismiss.[1] The proposed motion misconstrues the law, distorts the SEC's allegations, raises factual questions that are not properly resolved at the pleading stage, and is otherwise meritless.

**Background**

The Complaint alleges that Wander orchestrated a fraudulent scheme, and made material misrepresentations of fact, to induce $237 million in investments in a preferred equity offering ("Offering") that 777 Partners and 600 Partners ("Issuers") jointly issued. Compl. ¶¶ 1. 2, *et seq.* Wander co-founded, managed, and was an equity shareholder of the Issuers, and by December 2020, the Issuers' largest and most profitable subsidiary was SuttonPark, accounting for over 50% of the Issuers' total balance sheet assets, over 40% of the Issuers' total member equity, and generating $184 million in net income while the Issuers as a whole generated only $69 million. *Id.* ¶¶ 1, 19-21, 25-27. The Complaint alleges that Wander misled investors about the Issuers' financial condition and fraudulently induced investments in the Offering, including by taking steps to conceal from prospective investors the fact that SuttonPark had misused a credit facility ("Credit Facility") it relied on to generate income and in fact was overdrawn by $300 million on the Credit Facility. *Id.* ¶¶ 1-6, 8, 40-42, 52-76.

Wander's proposed motion seeks dismissal of this action arguing that the SEC has not alleged his fraud with sufficient particularity under Fed. R. Civ. P. 9(b). Wander further argues that his statements to prospective investors were "forward-looking statements about projected income" that contained sufficient "cautionary language", and therefore the "bespeaks caution" doctrine purportedly insulates Wander from liability. These arguments are meritless.

---

[1] Your letter references the Anti-Deficiency Act, 31 U.S.C. § 1341 et seq., which provides no basis for dismissal of this action, and indeed you make no argument for dismissal on this basis.

## Argument

### I.    The Complaint Satisfies Rule 9(b) Pleading Standard

Rule 9(b) requires that the Complaint "specify the statements that the plaintiff contends were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). In doing so, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Complaint clearly pleads facts and allegations reflecting that Wander was aware of the Issuers' dire financial condition and inability to generate profits due to the $300 million Credit Facility overdraw, and that Wander intended to mislead prospective investors when he made materially false and misleading statements or material omissions of fact to those investors designed to conceal the truth about the Issuers. Compl., ¶¶ 40-42, 52-76. Nevertheless, Wander confoundingly claims that the Complaint does not "sufficiently allege that Mr. Wander believed the projections were false when made" or allege with particularity facts showing Wander "intended to mislead in making these statements." The Complaint's allegations squarely belie these assertions. For example, the Complaint pleads that Wander was familiar with the Credit Facility, personally directed its misuse as well as the concealment of that misuse from the lender, and that Wander knew, by virtue of his personal involvement in these activities and his understanding of the Issuers' overall financial prospects, that the misuse of the Credit Facility was detrimental to the Issuers as a whole, and jeopardized their ability to continue generating profits. *Id.* ¶¶ 40- 42, 55-62.

Moreover, the Complaint pleads that Wander approved a presentation and other related investor marketing materials to promote the Offering to prospective investors beginning in the summer of 2021. The marketing materials included information about the Issuers' financial condition, including projected net income figures for 2021 that purportedly were substantially derived from Sutton Park, that Wander knew or recklessly disregarded was false or misleading given his knowledge of the Credit Facility overdraw. *Id.* ¶¶ 52-62. Among other things, the materials disclosed the existence of the Credit Facility but did not disclose its misuse or the $300 million overdraw. *Id.* ¶ 55. The Complaint pleads that the investor materials projected $132 million in net income for 2021, even though Wander knew, or recklessly disregarded, that by summer 2021, the Issuers had no realistic prospect of earning the projected 2021 net income due to SuttonPark's $300 million overdraw. *Id.* ¶ 53-54, 56. In addition to the direct material misrepresentations or omissions he made to prospective investors about the Credit Facility, Wander's steps to conceal the misuse of the Credit Facility from the lender raises a further reasonable inference that Wander intended to also deceive investors about the Credit Facility overdraw. *Id.* ¶¶ 40-42, 52-62.

In addition, the Complaint pleads that Wander defrauded an investor in 2022 by (1) using the same misleading investor presentation materials from summer 2021 to market the Offering to that 2022 investor, (2) failing to disclose that the Issuers had suffered substantial losses in the first quarter of 2022 due to interest rate increases ($504 million loss in financial assets line-item for first quarter of 2022 and quarterly operating loss of $382 million), and, relatedly, (3) by representing that the Issuers had suffered "no material adverse change" since the end of 2021 despite these early 2022 losses. *Id.* ¶¶ 70-76.

To the extent that Wander disagrees with the Complaint's facts or characterizations, such factual issues are not properly decided on a motion to dismiss. *Int'l Code Council, Inc. v.*

2

*Upcodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) ("[F]act-specific questions cannot be resolved on the pleadings."); *S.E.C. v. Feller*, 2024 WL 4753603 at *2 (S.D.N.Y. Nov. 12, 2024) ("[T]o the extent that Defendants suggest that the SEC's allegations are themselves false, that is a factual dispute that cannot be resolved at the motion to dismiss stage").

The proposed motion also argues that Wander did not mislead investors when, as the Complaint alleges, he represented to investors that the Issuers would use investor proceeds for "general corporate purposes" but instead distributed a portion of the proceeds for his personal benefit. *Id.* ¶¶ 63-69. To the extent the proposed motion will argue that Wander's distribution of proceeds for his personal benefit constituted a "general corporate purpose" in these circumstances, this again is a fact issue not properly resolved at this stage. Moreover, *In re SunEdison*, cited in your letter, does not address the use of corporate funds or investor proceeds for personal benefit and is therefore inapposite. *See also S.E.C. v. China Northeast Petroleum Holdings Ltd.*, 27 F.Supp.3d 379, 391 (S.D.N.Y. 2014) (NRB) ("Any common-sense understanding of 'general corporate purposes' does not include funneling shareholder funds to company insiders").

## II.     The "Bespeaks Caution" Doctrine Does Not Insulate Wander

The "bespeaks caution" doctrine for "forward looking statements" is not applicable where the actionable statements include materially false and misleading statements or material omissions of fact, *see S.E.C. v. Halitron, Inc.*, 2025 WL 678776, at *2 (2d Cir. Mar. 3, 2025) (summary order), nor where a defendant, as the Complaint alleges, subjectively "does not genuinely or reasonably believe" the forward-looking statement or projection. *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). Here, contrary to Wander's assertions, as described above, the Complaint adequately alleges that Wander knew or recklessly disregarded the fact that the projected net income information presented to prospective investors beginning in the summer of 2021 was false and misleading because Wander understood at the time, given his knowledge of SuttonPark's $300 million Credit Facility overdraw, that the Issuers had no realistic prospect of earning $132 million in projected net income for the year 2021. Compl. ¶¶ 2-9, 52-76. Furthermore, investors who reviewed the marketing materials in summer 2021, in advance of an investment decision in September 2021, would have reasonably believed that the projected net income figure of $132 million for that year reflected substantial income already earned by the Issuers, which is a present or past fact not protected by the bespeaks caution doctrine. *SEC v. Thompson*, 238 F. Supp. 3d 575, 603 (S.D.N.Y. 2017) (doctrine not applicable because the statements were ones "concerning present facts, not forward-looking statements"). Further, as alleged, Wander presented the 2022 investor with the same 2021 materials that undoubtedly were no longer "forward-looking" at that point, and also affirmatively stated in a subscription agreement to that investor that "no material adverse change" had occurred since 2021 when in fact, the Issuers had sustained losses in 2022. *Id.* ¶¶ 70-76. Again, such statements of present or past facts are not protected as forward-looking statements. *See Iowa Public Employees' Retirement System v. MF Global, Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010) ("It is settled that the bespeaks-caution doctrine applies only to statements that are forward-looking.")

For these reasons, the Commission plans to oppose Mr. Wander's proposed motion.

3

Very truly yours,

*/s/ Ben Kuruvilla*

Ben Kuruvilla


cc:     Hon. Victor Marrero, USDJ *(via ECF)*
           Counsel of record *(via ECF and E-Mail)*