**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

JOSHUA WANDER,
STEVEN PASKO,
DAMIEN ALFALLA,
777 PARTNERS LLC, and
600 PARTNERS LLC,

Defendants.

25 Civ. 8565 (VM)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSHUA WANDER'S MOTION TO DISMISS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendant Joshua Wander*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ... 1

ARGUMENT ... 1

I. The SEC's Opposition Indicates Why its Theory Is Wrong. ... 1

A. The Projections Are Non-Actionable Opinions. ... 1

B. Cautionary Language Addressed the Risk the SEC Identified. ... 4

C. The SEC Identifies No Affirmative Statement Rendered Misleading by Omission. ... 5

II. The Complaint Fails To Adequately Plead Its Claims. ... 6

A. The Complaint Does Not Allege that Mr. Wander "Made" the Relevant Statements. ... 6

B. The Complaint Fails To Satisfy Rule 9(b) or Rule 8. ... 8

III. The Complaint Fails to Establish Scheme Liability. ... 10

CONCLUSION ... 11

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re ASML Holding N.V. Sec. Litig.*,
2026 WL 851334 (S.D.N.Y. Mar. 27, 2026) ....................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................2, 6, 9

*DeKalb Cnty. Pension Fund v. Allergan PLC*,
2024 WL 677081 (2d Cir. Feb. 20, 2024)....................6

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) ....................3

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)....................10

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) ....................7

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
68 F. Supp. 3d 530 (S.D.N.Y. 2014)....................7

*Halperin v. eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002)....................4

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)....................6, 7

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
861 F. Supp. 2d 262 (S.D.N.Y. 2012)....................7

*Lorenzo v. SEC*,
587 U.S. 71 (2019)....................11

*In re Lottery.com, Inc. Sec. Litig.*,
715 F. Supp. 3d 506 (S.D.N.Y. 2024)....................4

*Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*,
2024 WL 2890968 (2d Cir. June 10, 2024) ....................3

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)....................2

*In re Omnicom Grp., Inc. Sec. Litig.*,
2007 WL 2376170 (S.D.N.Y. Aug. 10, 2007) ....................10

*PetEdge, Inc. v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017)....................8

*In re Philip Morris Int'l Inc. Sec. Litig.*,
2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021)....................5

*SEC v. Farnsworth*,
692 F. Supp. 3d 157 (S.D.N.Y. 2023)....................9

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011)....................10

*SEC v. Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) ....................7

*SEC v. Sason*,
433 F. Supp. 3d 496 (S.D.N.Y. 2020)....................11

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)....................2

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012)....................7

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017)....................10

## PRELIMINARY STATEMENT

The SEC's opposition only reflects the fundamental defects in its Complaint. The SEC's core legal theory is wholly inadequate under the securities laws: the Complaint cites projections, which are non-actionable opinions; the relevant materials were filled with specific cautionary language; and the SEC's attempt to shoehorn in alleged omissions misses the mark. The SEC also fails to allege Mr. Wander "made" any statement and fails to meet the relevant pleading standards. The Complaint is so insufficient that the agency now tries to amend through its opposition by alleging scheme liability, which is contrary to the rules and inadequate to boot. The Court should dismiss the Complaint in its entirety as to Mr. Wander.

## ARGUMENT

### I. The SEC's Opposition Indicates Why its Theory Is Wrong.

Backpedaling from the Complaint's assertion that Mr. Wander had "promised" investors a 10% dividend, Compl. ¶ 53, in its opposition (ECF No. 45, the "Opposition" or the "Opp."), the SEC admits that the statements it heralded as fraudulent were nothing more than projections. Contra the SEC's mischaracterization, the Complaint includes no allegations that Mr. Wander "did not believe" those projections when made. Similarly, the SEC misstates the specificity of the cautionary language in materials sent to investors and fails to allege any basis to hold Mr. Wander accountable for any omissions.[1]

#### A. The Projections Are Non-Actionable Opinions.

In its Opposition, the SEC no longer contends that Mr. Wander "promised" investors anything—and for good reason. The Investor Presentation was explicit that the data listed on the Dividend Service Coverage slide were projections and hypotheticals. Presentation at 11. As Mr.

[1] These failures cannot be rectified, so contrary to the SEC's assertion, dismissal should be with prejudice. *See* Opp. at 25 n.6.

Wander explained in detail in his Motion, those are non-actionable statements of opinion. ECF No. 40 ("Motion") at 12–15.

The SEC falls back on the argument that Mr. Wander "did not believe" the projections, or that they were "impossible." Opp. at 17, 19. But the Complaint pleads no facts that Mr. Wander personally disbelieved the projections, or even that anyone else expressed their disbelief to him. The SEC's theory thus requires the Court to infer Mr. Wander's subjective disbelief in the projections from the bare existence of an overdraw at a single subsidiary. That inference is too thin under *Omnicare*. 575 U.S. 175, 190 (2015) ("A reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement."). The Complaint is wholly consistent with the conclusion that Mr. Wander believed the projected net income figure was attainable, because he reasonably believed that the overdraw would not affect it. Motion at 13–14; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (affirming dismissal "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible"). To the extent the overdraw mattered at all, Mr. Wander reasonably could have expected the preferred equity offering—which aimed to raise up to $500 million, Presentation at 6—or profits from other 777 subsidiaries would cover any shortfall. Motion at 13–14.

The SEC glosses over these deficiencies in the Complaint by mischaracterizing them as "factual dispute[s]." Opp. at 18. Whether Mr. Wander's beliefs in the projections proved accurate, however, is irrelevant to whether the Complaint adequately pleads that belief was insincere. Even if the projections may have been overly optimistic—based on unrepresentative data from the first year of COVID-19 pandemic, *see* Compl. ¶ 27—"misguided optimism is not a cause of action." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).

For the same reason, the SEC's observation "that the Offering proceeds ultimately taken in were less than the overdraw amount" is irrelevant. Opp. at 18. The fact that the predictions were not borne out does not transform the earlier statements into fraud. *See In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *21 (S.D.N.Y. Mar. 30, 2018) (recognizing that "the federal securities laws do not allow such fraud-by-hindsight pleading"), *aff'd*, 764 F. App'x 127 (2d Cir. 2019).

Unable to plead that Mr. Wander did not believe the figures in the Investor Presentation when it was prepared and provided to investors in September 2021, the SEC tries to leverage the fact that the same presentation was used in December 2021 and August 2022. Opp. at 19. But reusing a presentation does not transform its contents into statements of present facts. The very first slide of the Investor Presentation stated it was prepared "SUMMER 2021," Presentation at 1, and its information and projections were only an estimate, clearly labeled as "preliminary and unaudited and subject to change." Presentation at 2 ("We undertake no obligation to publicly update any forward-looking statement, whether as a result of new information, future developments, or otherwise, except as may be required by law."); *see also Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, 2024 WL 2890968, at *4 (2d Cir. June 10, 2024) (no reasonable investor could have been misled when company warned it "undertook no obligations to update . . . financial projections" to reflect intervening events).

Finally, the SEC is simply wrong that the Investor Presentation omitted facts that render the projections misleading under *Omnicare*. Opp. at 19–20. A sophisticated investor reading the income projection in a marketing deck would understand it for what it was: management's forward-looking estimate, contingent on disclosed assumptions. That the $132 million net income figure was expressly called a "projection" from "SUMMER 2021" put investors in

December 2021 and August 2022 on notice that this projection was a stale forecast that diligence was expected to verify—and each investor certified it had done its own diligence. *See* Motion at 20 (quoting the Subscription Agreement). In any event, because a borrowing base deficiency has no impact on net income, *see* Motion at 13–14, it was not a material fact that needed to be disclosed.

**B. Cautionary Language Addressed the Risk the SEC Identified.**

The Investor Presentation and Subscription Agreement clearly disclosed the risks of investment, through 17 different risk categories, including multiple risks of material adverse effects. Motion at 16–17. Those warnings sufficiently put investors on notice that the projections may not be met. *E.g.*, *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 539 (S.D.N.Y. 2024).

The SEC compares this detailed cautionary language to generic "actual results may differ" warnings. Opp. at 20–21. That comparison misreads the breadth and the specificity of the two pages and 17 business-specific warnings provided in the Investor Presentation, which expressly disclaimed the very risk the Complaint cites. Compl. ¶ 53 (Issuers would "continue to earn, substantial positive net income sufficient to pay the promised 10% dividend"). Those disclaimers stated that: the financial statements were unaudited, the Issuers made "[n]o representation or warranty as to the accuracy, completeness, or fairness" of the information presented, and the Company "undertake[s] no obligation to publicly update any forward-looking statement." Presentation 2–3; *see Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002) (cautionary language is sufficient when it "directly relate[s] to the risk that brought about [investors'] loss."). The Subscription Agreement reinforced those limitations by providing that the only representations attributable to the 777 Companies were those "contained in the

Agreement." Sub. Agreement at 2.[2] The mere fact that the Investor Presentation did not specifically mention the alleged overdraw, Opp. at 20–21, is irrelevant, since an overdraw is a borrowing base deficiency on a secured credit facility and has no impact on net income. *See* Motion at 13–14.

### C. The SEC Identifies No Affirmative Statement Rendered Misleading by Omission.

The Complaint fails to identify any affirmative statement in the Investor Presentation representing that the Credit Facility was free of borrowing base deficiencies. Motion at 19–20; Compl. ¶¶ 55–56 (repeatedly citing facts the Presentation purportedly "did not disclose"). Such omissions are not actionable, because Mr. Wander and 777 Partners had no "affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

The SEC retreats to alleged "representations about projected net income and dividend coverage," Opp. at 22, but never explains how a failure to disclose the borrowing base deficiency rendered those statements "half true." Half-truths are "literally true statements that create a materially misleading impression." *In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059, at *11 (S.D.N.Y. Sept. 10, 2021). The representations in the Investor Presentation were projections and hopes for the future, which could not be "literally true," false, or half-true at the time they were made. The SEC's straining attempts to salvage its theory are similarly

[2] The SEC contends "that the Subscription Agreement incorporated by reference the representations in the . . . Investor Presentation." Opp. at 22, n.5. The Agreement says otherwise. The Investor Presentation appears only in Section 2(d), as a buyer-side access representation, and is not the Issuer's adoption of its entire content. The integration and non-reliance provisions confirm the point. *See* Sub. Agreement §§ 7(a) (The Agreement "contains the entire understanding of the parties."); 2(e) (The subscriber disclaims reliance on "any advice, statement, representation or warranty made by any person or entity . . . except for the express statements . . . contained in this Agreement.").

unavailing. The assertion that the schedule listing the Credit Facility "invited investors to conclude the Issuers were compliant under the Credit Facility," Opp. at 22, asks too much. *See Twombly*, 550 U.S. at 570. As pled, the schedule of debt obligations was descriptive, not representational. Compl. ¶ 55 ("This schedule listed the Credit Facility"). The schedule told the investors only that the debt existed; it did not implicitly warrant compliance with every covenant under the facility. *See DeKalb Cnty. Pension Fund v. Allergan PLC*, 2024 WL 677081, at *3 (2d Cir. Feb. 20, 2024) (explaining that the challenged statements "could not be misleading since they did not even purport to speak to" the omitted fact). The SEC points to no affirmative statement that when "considered as a whole and in context" would represent to a reasonable investor that there was no borrowing base deficiency at all. *Id.* at *2.

## II. The Complaint Fails To Adequately Plead Its Claims.

The Complaint is also inadequate under the relevant pleading standards. The SEC fails to allege that Mr. Wander "made" any material representations. The SEC fails to plead specific facts as to the fraud or negligence claims to adequately clear the standards under Rule 9(b) or Rule 8.

### A. The Complaint Does Not Allege that Mr. Wander "Made" the Relevant Statements.

As Mr. Wander explained in his motion, the SEC cites to five alleged misstatements to support its claims. But as to four, the Complaint alleges only that Mr. Wander "reviewed and approved" those statements, and as to the fifth, alleges nothing about its maker. Motion at 21–22. That is wholly insufficient to hold him accountable under *Janus Cap. Grp., Inc. v. First Derivative Traders*. 564 U.S. 135 (2011).

Instead of addressing *Janus*, the SEC engages in misdirection. First, the SEC asserts that the Complaint alleges Mr. Wander had "ultimate authority" over the statements in what it calls

"multiple, overlapping ways." Opp. at 10–11. But each of the "ways" the SEC cites does not show his authority. Review, approval, and distribution of statements are not enough. *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) ("approval and input" insufficient); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 539 (S.D.N.Y. 2014) ("distribut[ion]" insufficient). Nor are "direct[ing] employees" to build a model, "sign[ing] the board consent" but not the statements themselves, or "participat[ing] in conversations" that led to the statements. Opp. at 10–11; *SEC v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) (rejecting SEC argument that "participation in the preparation" of misstatements is sufficient under *Janus*, even as to CEO and CFO of company); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) ("Daidone is not responsible for misleading statements in SEC filings he did not sign.")[3]

The SEC next asserts that "corporate formalities do not alter Mr. Wander's liability under *Janus*," Opp. at 11, but that is in direct conflict with *Janus*. There, the Supreme Court treated corporate formalities as central to its analysis, explaining that "[a]lthough First Derivative and its *amici* persuasively argue that investment advisers exercise significant influence over their client funds, it is undisputed that the corporate formalities were observed here." 564 U.S. at 145–46. Mr. Wander's limited roles at 600 Partners and SuttonPark are powerful indicia that he could not have been a maker of any statements about those companies.

---

[3] The SEC's brief cites to *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012), asserting that case directly states that an executive who: "vetted and approved documents containing omissions and misstatements and . . . filed those documents" exercises ultimate authority. Opp. at 10. The language in the quotation marks does not appear in *Liberty Media*. And the brief overstates the holding: the court there held that a *corporation* had ultimate authority over the statements in the documents it filed, not any executive. *Id.* at 271.

### B. The Complaint Fails To Satisfy Rule 9(b) or Rule 8.

The Complaint does not satisfy Rule 9(b)'s heightened pleading requirements for fraud, or Rule 8's requirements for negligence.

*First*, the Complaint does not adequately explain Mr. Wander's motive. The SEC asserts he wanted to secure a supposed personal benefit, raise "capital to attempt to cure the overdraw" and "delay[] the day Lender A would discover the fraud." Opp. at 14. The Complaint mentions nothing about any purported delay. There is no specific assertion that Mr. Wander was seeking to raise capital to address the alleged overdraw, and even if so, "such a desire is not unique to" Mr. Wander as the desire to cure any alleged overdraw would be common to all of 777's corporate directors and officers. *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 495 (S.D.N.Y. 2017). And the only supposed personal benefit pleaded in the Complaint is wholly consistent with the legitimate business purpose of purchasing Mr. Wander's preexisting shares of preferred equity. *See* Motion at 25; *see also* Compl. ¶ 65 (acknowledging that the Term Sheet stated that there were "no restrictions" on use of the proceeds).

*Second*, the SEC similarly fails to plead facts evincing conscious misbehavior or recklessness. Every fact it cites originates with Mr. Alfalla and reflects his opinions alone. The Complaint does not point to a single statement by Mr. Wander suggesting that the projections were "groundless," or even mentioning the Investor Presentation, the projections, or any intent to mislead. The Complaint does not allege Mr. Wander acknowledged or responded to any of Mr. Alfalla's communications. Compl. ¶¶ 43, 59–60. The earliest exchanges—a December 2020 "spreadsheet," a February 2021 chat about a "$75m" deficit, and a September 2021 chat—at most acknowledge a borrowing base deficiency at a single subsidiary. *Id.* ¶ 43. Mr. Alfalla's first direct text was sent September 25, 2021, four days *after* the raise closed. *Id.* ¶ 59. Mr. Alfalla's November 2021 text does not advance the SEC's claims, because the Complaint

does not allege that Mr. Wander read or even received the message, which in any event did not concern the projected income figure or the Investor Presentation. Ultimately, those messages reflect *Mr. Alfalla's* state of mind, not Mr. Wander's.[4] Because the Complaint fails to plead *scienter*, the SEC's Section 17(a)(2) claim—which it defends only by invoking that same (deficient) *scienter* showing, Opp. at 25—also fails.

*Third*, the Complaint does not adequately plead Mr. Wander made any misrepresentations with respect to the "use of proceeds." Opp. at 16. The claim rests on the assertion that "any common-sense understanding of 'general corporate purposes' does not include funneling shareholder funds to company insiders." *Id.* That characterization is belied by the Investor Presentation's express statement that the proceeds *would* be used for the purpose of redeeming shares of equity. Presentation at 6 (listing "the redemption of certain outstanding membership interests of Brickell Insurance Holdings, LLC" as a contemplated use of proceeds). Despite the express recognition of this legitimate corporate purpose, the SEC nevertheless asks the Court to accept as true its conclusion that "the transfer was for Wander's personal benefit." Opp. at 16. Because transfers for such purposes were explicitly authorized in the Investor Presentation, the Court should reject this baseless speculation. *See Twombly*, 550 U.S. at 557. For the same reasons, the transfer of funds does not satisfy Section 17(a)(2)'s requirement that the defendant actually obtain money or property by means of untrue statements. *SEC v. Farnsworth*, 692 F. Supp. 3d 157, 177 (S.D.N.Y. 2023).

*Fourth*, the SEC's argument about a material adverse change is similarly unpersuasive. The Complaint identifies only a temporary first-quarter loss caused by interest rate changes.

[4] Whether Mr. Wander read the texts is not, as the SEC suggests, a "factual dispute," Opp. at 15, as the Complaint never alleges he did.

Compl. ¶ 72. The SEC, however, must allege that a loss persisted into the third quarter of 2022, leaving the Company's financial condition as of August 2022 materially worse than in December 2021. *See In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 2376170, at *12 n.15 (S.D.N.Y. Aug. 10, 2007) ("[A] temporary decline in an investment's fair value does not need to be accounted for as a loss in a company's earnings, but an 'other than temporary' decline must be."). The SEC simply asserts the figure was not a "minor fluctuation," Opp. at 16, but cites no caselaw that suggests the size of a fluctuation determines materiality. *Contra Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 164 (2d Cir. 2000) (declining to use numerical benchmarks as a measure of materiality); *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35–37 (2d Cir. 2017) (holding that materiality did not turn on the magnitude of selected financial metrics in isolation, even though results missed expectations by 143 percent).

**III. The Complaint Fails to Establish Scheme Liability.**

With its theory otherwise in shambles, the SEC tries to repackage its false statement complaint into one based on "scheme liability," Opp. at 23–24, a gambit which courts have looked at skeptically and often rejected, *see SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) ("[C]ourts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability . . . by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'"). Here, the word "scheme" appears precisely three times in the SEC's 102 paragraph Complaint, each time in connection with the general elements of Rule 10b-5. Compl. ¶¶ 92, 95, 98. That "alone is sufficient grounds to dismiss plaintiffs' purported claim for scheme liability," because it is an attempt to amend the complaint "by the briefs in opposition to a motion to dismiss." *In re ASML Holding N.V. Sec. Litig.*, 2026 WL 851334, at *22 (S.D.N.Y. Mar. 27, 2026) (citation omitted).

Even if the Court were to consider this slipshod theory, it is wholly inadequate under the law. The transfer of proceeds to Mr. Wander's account was not an inherently deceptive act. Opp. at 23–24. The Complaint alleges only that Mr. Wander transferred money to his personal account and speculates that these funds were then used for his personal benefit. Compl. ¶ 65. Those transfers were not only not "inherently deceptive" but were entirely consistent with the legitimate business purpose of purchasing Mr. Wander's preexisting shares of preferred equity. *See* Motion at 25; *see also* Compl. ¶ 65 (acknowledging that the Term Sheet states that there were "no restrictions" on 777 Partners' use of the proceeds).

The SEC's fallback theory—that Mr. Wander's alleged "dissemination" of the Investor Presentation states scheme liability, Opp. at 24—fares no better. It is an end-run around *Janus*, and regardless requires *scienter*, as to which the Complaint pleads none. *See Lorenzo v. SEC*, 587 U.S. 71, 79 (2019); *see also* Section II.B, *supra*. As previously discussed, the alleged misstatements in the Investor Presentation were opinions or forward-looking statements accompanied by cautionary disclaimers. *See* Section I.C., *supra*. Mr. Wander did not have a duty to disclose the remaining misstatements premised on omissions. *See id*. As a result, his alleged distribution of the Investor Presentation did not have "the purpose and effect of creating a false appearance." *SEC v. Sason*, 433 F. Supp. 3d 496, 508 (S.D.N.Y. 2020).

## CONCLUSION

For the foregoing reasons, and the reasons stated in Mr. Wander's motion to dismiss, the Complaint should be dismissed in its entirety as to Mr. Wander.

Dated: May 18, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume requirements of Local Civil Rule 7.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York because it is 3,456 words (exclusive of the table of contents and authorities); and

2. This document complies with the typeface requirements of Local Civil Rule 7.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 12-point Times New Roman font, with footnotes that are at least 10-point font.

*/s/ Jordan Estes*
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY
10166
(212) 351-2315
JEstes@gibsondunn.com